IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY L. R.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-159-DGW[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in April 2015, alleging disability as of January 31, 2015. The onset date was the day after a prior application had been denied. After holding an evidentiary hearing, an ALJ denied the application on December 11, 2017. (Tr. 20-31). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 8, 11.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to consider all relevant medical evidence, specifically, a full spine CT myelogram done in July 2016.

2. The ALJ erred in relying on outdated medical opinions.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the

burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date and that he was insured for DIB only through June 30, 2017. He found that plaintiff had severe impairments of lumbar, cervical, and thoracic degenerative disc disease status post multiple lumbar surgeries and a cervical surgery; dysthymic disorder; generalized anxiety disorder; and pain disorder associated with psychological factors and a medical condition.

In the prior denial, a different ALJ had found that plaintiff was limited to sedentary work. On this application, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, including sitting/standing/walking for six out of eight hours per day. He was capable of occasional climbing of ramps, stairs, ladders, ropes and scaffolds; occasional stooping, kneeling, crouching, and crawling; frequent bilateral handling and fingering; and no concentrated exposure to vibration. He also had mental imitations which are not in issue here.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could not do his past work, but he was not disabled because he was able to do other jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in

formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

**1.   Agency Forms**

Plaintiff was born in 1967 and was 50 years old on the date of the ALJ's decision. He had a twelfth-grade education and had worked as a janitor, farm laborer, dump truck driver, and mechanic. (Tr. 255, 260).

In May 2015, plaintiff reported that he could not work because of neck, back, and leg pain, numbness in his legs and arms, arthritis in his lower back, headaches, nausea, and "pain all over." He did no household chores. He went outside three times per day to "walk a little." He had trouble with activities such as lifting, squatting, bending, walking, reaching, and sitting. (Tr. 267-278).

**2.   Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in August 2017. (Tr. 38).

Plaintiff testified that he had four low back surgeries. The first one was when he was 29 years old. The last surgery was a fusion with hardware. He still had the same back symptoms as before. He had surgery on his neck in March 2016. He was better for a while, but numbness in his hands was recurring. (Tr. 43-46).

His insurance did not pay for everything, and he owed money to his back doctor. The doctor's office said he could not come back unless it was an

emergency. He saw his family doctor about six weeks before the hearing. He took Tizanidine as needed for muscle spasms and Hydrocodone as needed for pain. Hydrocodone helped a little. (Tr. 46-48).

### 3. Medical Records

Plaintiff had four lumbar surgeries. The last one was done by Dr. Vaught in 2013. That surgery consisted of removal of previously placed hardware at L5-S1 and fusion of L4-5. He did well for some time but returned to Dr. Vaught's office with increasing low back, thoracic, and neck pain in March 2014. (Tr. 373).

A CT myelogram of the full spine was done in March 2014. This study showed a mild disc bulge at L3-4 which combined mild facet and ligamentous hypertrophy; the AP diameter of the spinal canal at that level was 12mm; a disc marginal osteophyte at L4-5 with no central spinal canal stenosis; mild protrusion at T6-7 and mild multilevel degenerative disease in the thoracic spine; and mild disc bulge and protrusion at C5-6 with narrowing of the spinal canal to 8-9 mm and mild right-sided foraminal narrowing. (Tr. 368-370).

Dr. Vaught's office treated plaintiff's neck pain and pain radiating to his arms with home traction and cervical epidural steroid injections in 2015. (Tr. 376, 428-435).

Acting as a state agency examiner, Dr. Karshner examined plaintiff at the request of the agency in June 2015. Plaintiff said he could not work because of back pain. Dr. Karshner observed that plaintiff walked without a limp to the height and weight measuring station and bent forward and picked up his shoes

without difficulty. However, he then told the doctor that he could not bend forward. The doctor described this as "inconsistent." On exam, muscle strength and mass were normal. He showed "inconsistent" give-way weakness. Sensation in the upper extremities was normal. Straight leg raising was negative. He bent forward to 52 degrees but had bent forward to 90 degrees to pick up his shoes. His arms and neck were "well tanned." His 2014 myelogram showed bony incorporation of the fusion at L5-S1, but not at L4-5. Dr. Karshner concluded that he was able to do work at the light exertional level. (Tr. 385-390).

Plaintiff returned to Dr. Vaught's office in January 2016 with worsening cervical and arm pain. An MRI showed multilevel central canal stenosis and mild cord flattening at C5-6 and C6-7. (Tr. 436-439, 442).

Dr. Vaught performed surgery consisting of anterior discectomy and fusion with instrumentation at C5-6 in March 2016. (Tr. 449-451). Six weeks later, plaintiff had a marked reduction in neck pain and no arm symptoms but did have some left finger numbness. (Tr. 455). He returned in July 2016 with worsening of his symptoms and weakness in the right bicep. Exam showed normal sensation in the upper extremities. Cervical range of motion was limited due to fusion. He also complained of worsening of his chronic low back pain. Dr. Vaught offered to increase plaintiff's pain medication, but plaintiff declined. The doctor recommended an EMG and a full spine myelogram. He observed that, since plaintiff had not improved after five spinal surgeries, applying for disability was "a reasonable consideration." (Tr. 459-463).

The nerve conduction and EMG studies were normal, but the studies were limited because plaintiff had poor tolerance to the study. (Tr. 465-469).

A CT myelogram of the full spine was done in July 2016. The radiology report compared the results with the results of the 2014 CT myelogram. The 2016 study showed a small disc bulge at L2-3; diffuse disc bulge at L3-4 with further narrowing of the spinal canal to 9 mm; diffuse osteophytes and bilateral foraminal narrowing at L4-5; mildly increased disc protrusion at T6-7; similar small disc protrusions at C3-4, C4-5 and C6-7, with decreased canal stenosis at C5-6; and facet arthropathy at C5-6 and C7-T1. There was only partial fusion at L4-5. (Tr. 471-475).

Plaintiff returned to Dr. Vaught in August 2016. Dr. Vaught noted that the CT myelogram showed "some modest progression of his adjacent segment disease at L3-4" but he "personally would not recommend surgery at this time." Plaintiff said that the Ultram that Dr. Vaught had been prescribing was not effective, so he prescribed a short course of Hydrocodone to see if that helped. Dr. Vaught referred him to a physiatrist and a pain management specialist and noted that, as a surgeon, he did not provide long-term narcotic management. (Tr. 478-483).

A physiatrist evaluated plaintiff in September 2016. Gait and station were normal. Range of motion of the thoracic and lumbar spine were limited. Straight leg raising and Patrick testing caused non-specific pain and "he was barely able to tolerate these maneuvers." Muscle strength was full, and sensation was normal. She assessed lumbar myofascial pain syndrome and lumbago. (Tr. 490-494).

A pain management specialist recommended caudal injections and possible implantation of a pain pump if he did not improve. (Tr. 489). A caudal epidural steroid injection administered in November 2016 gave over 75% relief of back and hip pain for a while, but the pain returned. Another injection was done in late December 2016. (Tr. 500-510).

4. **State Agency Reviewers' Opinions**

In October 2015, James Hinchen, M.D., assessed plaintiff's RFC based on a review of the records. In his opinion, plaintiff was able to do work at the light exertional level, limited to occasional postural activities. (Tr. 148-150).

## Analysis

Plaintiff first argues that the ALJ erred in failing to consider all relevant medical evidence, specifically, the 2016 full spine CT myelogram and erred in relying on the outdated opinions of the state agency reviewer and examining consultant because they did not review those studies either.

The ALJ did not mention the 2016 CT myelogram. Defendant argues that the 2016 studies do not show that plaintiff's condition had worsened. He argues that plaintiff's own surgeon, Dr. Vaught, said that the studies showed only "modest progression" in plaintiff's lumbar spine and did not recommend surgery. Doc. 23, pp. 5-6.

Defendant's argument misses the mark. In January 2015, a different ALJ concluded that plaintiff was limited to sedentary work. (Tr. 25). In the current

denial, the ALJ found that plaintiff was capable of a limited range of light work. Between the two denials, plaintiff turned 50. At that age, he would be deemed disabled under the Grids if he were limited to unskilled sedentary work. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1. Therefore, the question is not whether plaintiff had gotten worse, it is whether he had improved since the prior denial.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The 2016 CT myelogram undermines the ALJ's conclusion that plaintiff's condition had improved since January 2015. The ALJ highlighted the normal EMG nerve conduction study from 2016 but neglected to mention the 2016 CT myelogram. He rejected Dr. Vaught's July 2016 statement that plaintiff had failed to improve after five surgeries and asserted that the medical evidence was not consistent with Dr. Vaught's conclusion. The ALJ failed to explain how he reached that conclusion without considering the 2016 CT myelogram results.

The radiologist and Dr. Vaught were the only two doctors who reviewed the 2016 CT myelogram. Both indicated that it showed some worsening of plaintiff's condition since the 2014 myelogram. The 2016 study does not compel a finding that plaintiff is disabled, but the ALJ could not properly conclude the opposite without considering the 2016 study.

For similar reasons, the ALJ erred in relying on the state agency

consultants' opinions, rendered long before the 2016 cervical surgery and 2016 CT myelogram

In *Stage v. Colvin*, 812 F.3d 1121 (7th Cir. 2016), the Seventh Circuit held that the ALJ erred in accepting a reviewing doctor's opinion where the reviewer did not have access to later medical evidence containing "significant, new, and potentially decisive findings" that could "reasonably change the reviewing physician's opinion." *Stage*, 812 F.3d at 1125. In a later case, the Seventh Circuit reiterated the rule. "An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018). See also, *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018).

Under the circumstances of this case, it was error to rely on the state agency consultants' opinions.

The ALJ failed to build the requisite logical bridge between the evidence and his conclusion. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the

Commissioner after further proceedings.

### Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE:   October 7, 2019.

*Donald Wilkerson*

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**